IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

GUY RICHARD BUCCI and
ASHLEY NICOLE LYNCH,

    Plaintiffs,

v.                                       Civil Action No. 2:22-CV-00604

BRIAN DOOLEY KENT,
individually,

    Defendant.

## PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO DISQUALIFY DEFENDANT'S COUNSEL BAILEY & GLASSER, LLP

In an effort to avoid disqualification pursuant to the West Virginia Rules of Professional Conduct, Defendant asks this Court to deny *Plaintiffs' Motion to Disqualify Defendant's Counsel Bailey & Glasser, LLP* [DOC 23], arguing that the former representations of Plaintiff Guy Bucci by Bailey Glasser, LLP ("BG") are not the *exact* same matters to the case at bar. While the former representations and current representation do not involve the exact same joint venture, a thorough review of the nature of the representations clearly provide that the facts, circumstances, and legal issues of the former representations are substantially similar to the heart of this matter, involving attorney representations, attorney fee disputes, including joint ventures or co-counsel agreements. Further, there is a substantial risk that the current representation of Defendant Kent will involve the use of information acquired in the course of representing Plaintiff Bucci. As such, BG and its attorneys are disqualified from representing Defendant Kent pursuant to Rules 1.10(b) and 1.9(a) of the West Virginia Rules of Professional Conduct.

1

In *State ex rel. Bluestone Coal Corp. v. Mazzone*, 226 W. Va. 148, 697 S.E.2d 740 (2010), the West Virginia Supreme Court established that five factors must be satisfied in order to disqualify an attorney pursuant to Rule 1.9(a):

> (1) The existence of an attorney-client relationship between the attorney and the former client; (2) the existence of an attorney-client relationship between the attorney and the subsequent client; (3) the subject matter of the subsequent client's representation either is the same or substantially related to the representation; (4) the subsequent client's representation is materially adverse to the interest of the former client; and (5) the former client has not consented, after consultation, to the subsequent representation.

*Id.* Further, the court instructed of the importance of the court's authority to maintain the integrity of the judicial process when the disqualification of counsel is necessary under certain circumstances:

> To preserve the integrity of and public confidence in the legal system, we have grounded a court's disqualification authority in the prudential concerns that the challenged representation either suggests an obvious conflict of interest or that it gives rise to improper appearances. "Under the *Code of Professional Responsibility*, a lawyer may be disqualified from participating in a pending case if his continued representation would give rise to an apparent conflict of interest or appearance of impropriety based upon that lawyer's confidential relationship with an opposing party." Syl. Pt. 2, *State ex rel. Taylor Assocs. V. Nuzum*, 175 W. Va. 19, 330 S.E.2d 677 (1985).

*Id.*, 697 S.E.2d at 749-750.

Importantly, the *Mazzone* court explained that "the facts and circumstances required to disqualify an attorney depends upon the unique characteristics of the case and its impact upon a prior or current attorney-client relationship." *Id.* In examining whether a firm should be disqualified from representation under Rule 1.9, the *Mazzone* court recognized the importance of safeguarding "the sanctity of the attorney-client relationship and the disclosure of client confidences in such representation" citing Richard E. Flamm, Lawyer Disqualification:

> The rule that prohibits lawyers from disclosing or adversely using a former client's confidence-and authorizes courts to disqualify them if they do-is a

2

prophylactic one. The rule is concerned, first and foremost, with insuring that a former client will be protected against both intentional and inadvertent disclosure of his confidential information; as well as against the unfair advantage a lawyer could take of her client by using information he communicated in confidence during the course of the earlier representation.

Preserving client confidences may be the touchstone of the rule that limits a lawyer's ability to oppose the interests of a former client; but, contrary to the opinion of some judges, the rule was intended to serve other purposes as well. In certain cases the rule may serve to foster vigorous advocacy on behalf of the lawyer's current client by removing from the case a lawyer who would otherwise have to be conscious of preserving her former client's confidences.

The rule also recognizes that an attorney can obtain more than confidential information from a client; as well as that proper legal representation requires an unimpeded flow of information from client to lawyer, and of advice from lawyers to client; and that, if a client perceived that his lawyer was free to divulge information imparted to her confidence, he might be reluctant to completely confide in his lawyer; and therefore withhold information critical to his effective representation. The rule exists, therefore, not only to protect confidential communications, but to fulfill the client's reasonable expectations about the loyalty of the lawyer he has retained to represent him in a particular matter; by allaying any apprehension on the party of the client-or the court-that, if a client communicates confidential information to a lawyer, he may be rising adverse consequences somewhere down the line. The rule thereby serves to encourage clients to freely, frankly, and openly disclose-in an atmosphere of trust-all of the information counsel needs to adequately prepare her client's case; and, thus, serves to preserve and promote the attorney-client relationship, as well as to promote public confidence in the integrity of the legal profession, the adversarial process, and the judicial system as a whole.

Richard E. Flamm, Lawyer Disqualification: Conflicts of Interest and Other Bases §7-3, at 126-30 (2003 & Cum.Supp.2010) (footnotes omitted).

*Id.*, 697 S.E.2d at 75-751.

With respect to the requirement that the subject matter of the formers client's representation be the "same or substantially related matter", the court explained that analysis is required of the "facts, circumstances, and legal issues of the two representations." *Id.*, 697 S.E.2d at 753. The *Mazzone* court further recognized,

[u]nder West Virginia Rule of Professional [Conduct] 1.9(a), a current matter is deemed to be substantially related to an earlier matter in which a lawyer acted as

3

counsel if (a) the current matter involves the work the lawyer performed for the former client; or (2) there is a substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client, unless the information has become generally known.

*Id.* citing syl. Pt. 1, *State ex rel. Keenan v. Hatcher*, 210 W.Va. 307, 557 S.E.2d 361 (2001).

In *Mazzone*, the circuit court denied Bluestone Coal's motion to disqualify Buchanan Ingersoll as counsel for Mountain State on the basis that Mountain State's counsel's representation violates West Virginia Rules of Professional Conduct Rule 1.7(a), 1.7(b), 1.9 and 1.10. However, the West Virginia Supreme Court granted writ of prohibition and disqualified Buchanan Ingersoll from representing Mountain State in the litigation.

In analyzing whether the current representation was "substantially related" to its prior representation, the West Virginia Supreme Court held the representations were "virtually the same" in that both representations involve the companies' performance and the same type of contract, a coal supply agreement. *Id.* Critically, the court analyzed the two representations, legally, and the "substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client, unless that information has become generally known." *Id.* (citations omitted). There, Buchanan Ingersoll requested documents from Bluestone Coal regarding its prior defense in the former representation prior to Bluestone Coal filing an answer in the present litigation. Finding that Buchanan Ingersoll possessed sufficient knowledge to anticipate a specific defense, the Court held that not only was there a substantial risk that attorney could have used information obtained from the former client in the prior representation, but the actual evidence was provided that such information and knowledge was used to the former client's detriment. "Once a former client establishes that the attorney is representing another party in a substantially related matter, the former client need not

demonstrate that he divulged confidential information to the attorney as this will be presumed." Syl pt. 4, *State ex rel. McClanahan v. Hamilton*, 189 W.Va. 290, 430 S.E.2d 569 (1993).[1]

Similar to *Mazzone*, here, BG Attorney Snyder has already used the information gained from the prior representation in reference to the future litigation of this case in the blatant mischaracterization of the former representation of Bucci to the prejudice of his former client. [DOC 23-1, Exhibit 1]. In fact, while the referenced former representation in Attorney Snyder's letter of November 2, 2022, involved a partner or joint venture agreement in which Mr. Hrutkay failed to perform his part of the agreement leading to dispute which was settled once Mr. Hrutkay was released from prison following a guilty plea, Attorney Snyder wastes no time in mischaracterizing the former representation to cast Bucci in a negative light. Also, by letter dated August 20, 2022, Attorney Snyder attacks Bucci's character in accusing him of holding an unethical "side agreement." [DOC 23-1, Exhibit A]. Here, therefore, it is clear that there is substantial risk that BG's representation of Defendant Kent will involve use of information acquired from its former representation of Bucci in that the information has already been mischaracterized to Bucci's detriment.

Additionally, specifically regarding the fourth element of a Rule 1.9(a) analysis, the *Mazzone* court recognized that the comment to Rule 1.9 states that "[t]he underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." *Id.* In analyzing this element, the court

---

[1] It cannot be disputed that the former representations of Bucci did not involve a motor vehicle accident, divorce proceeding, products liability case, nor a wills and trust matter, and, in fact, the former representations concern attorney fee disputes, joint ventures and co-counsel agreements, all substantially similar issues to the case at bar.

5

noted that the parties' interests were materially adverse insofar as they were on opposing sides of the litigation, resulting in a "changing of sides", and, thus, satisfying this element.

Here, similar to *Mazzone*, a "switching of sides" has also occurred involving Bucci's former representation concerning the Breast Implant Joint Venture wherein the issue of indispensable and/or necessary party joinder occurred, and advice was offered to the contrary of BG's current argument on behalf of Defendant Kent. *See* Declaration of Guy R. Bucci, attached hereto as Exhibit 1.

As clearly recognized in *Roberts & Schaefer, Co. v. San-Con, Inc.*, 898 F.Supp. 356, 359 (S.D. W.Va. 1995), "disqualification is appropriate when representation of a client will result in the violation of the Rules of Professional Conduct or other law." (citing W. Va. R. Prof'l Conduct 1.16(a)(1)). Further, as this Court confirmed in determining whether to disqualify counsel, the Court "should act to prevent the appearance of impropriety and resolve doubts in favor of disqualification." *Id.* citing *United States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th Cir. 1977). Here, Defendant's Response simply fails to make any concise argument which would serve to resolve the appearance of impropriety present with their current representation of Defendant Kent. How Mr. Snyder gained access to those previous files, presumed closed, to now use and mischaracterize the information therein adversely to Mr. Bucci is neither explained nor explainable in any ethical context.

## CONCLUSION

Accordingly, Plaintiffs respectfully request their *Motion to Disqualify Defendant's Counsel Bailey & Glasser, LLP* [DOC 23] be granted and an order entered to disqualify the law firm of Bailey and Glasser, LLP from the representation of Defendant Kent in the present matter.

                                                          GUY RICHARD BUCCI
                                                          and <u>ASHLEY NICOLE LYNCH</u>,
                                                          By Counsel,

<u>/s/Ronald N. Walters Jr.</u>
Ronald N. Walters, Jr., Esquire (WVSB #13736)
Walters Law Firm
16 Capitol Street
Charleston, WV 25301
(304) 391-8002

<u>/s/Guy R. Bucci</u>
Guy R. Bucci, Esquire (WVSB #0521)
Ashley N. Lynch, Esquire (WVSB #11714)
108 ½ Capitol Street
Suite 200
Charleston, WV 25301
(304) 550-5660

7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

GUY RICHARD BUCCI and
ASHLEY NICOLE LYNCH,

    Plaintiffs,

v.                                             Civil Action No. 2:22-cv-00604

BRIAN DOOLEY KENT,
individually,

    Defendant.

## CERTIFICATE OF SERVICE

I, Guy R. Bucci, counsel for Plaintiffs, do hereby certify that I have this date electronically filed the PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO DISQUALIFY DEFENDANT'S COUNSEL BAILEY & GLASSER, LLP, with the Clerk of Court using the ECF system which sent notification of such filing to all counsel of record.

DATED, this 31st day of May, 2023.

/s/ *Ronald N. Walters Jr.*
Ronald N. Walters, Jr., Esquire (WVSB #13736)
Walters Law Firm
16 Capitol Street
Charleston, WV 25301
(304) 391-8002

/s/ *Guy R. Bucci*
Guy R. Bucci, Esquire (WVSB #0521)
Ashley N. Lynch, Esquire (WVSB #11714)
108 ½ Capitol Street, Suite 200
Charleston, WV 25301
(304) 550-5660