IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

GUY RICHARD BUCCI and
ASHLEY NICOLE LYNCH,

     Plaintiffs,

v.                                                                                    Civil Action No. 2:22-CV-00604

BRIAN DOOLEY KENT,
individually,

     Defendant.

**DECLARATION OF GUY R. BUCCI**

I, Guy Richard Bucci, do hereby declare and affirm the following:

1.     I am Guy Richard Bucci and I am a Plaintiff in the above captioned civil action.

2.     I am a 1967 graduate of the University of Pittsburgh with a degree in English Literature and a 1970 graduate of West Virginia University with a Juris Doctor degree.  I was admitted to practice in West Virginia also in 1970.

3.     I have personally known Benjamin L. Bailey from approximately the time he served as a law clerk to the Honorable John T. Copenhaver, Jr., now senior status United States District Judge, and thereafter through his years as General Counsel for Governor Arch Moore and through his years at the law firms Bowles Rice and Bailey Glasser, through the present.

4.     Mr. Bailey immediately gained my confidence and respect, which was maintained through many instances of contact over the years.

5.      In fact, my longtime assistant and I recall that when Mr. Bailey started Bailey

Glasser, he requested from us, and we provided him with pleadings and discovery requests

directed to plaintiffs' cases.

6.      In the late 1990's, a number of claims were made by my former clients against

The Equitable Insurance Company ("Equitable"), its agent James Marshall and others for

Marshall's criminal conduct of converting to himself $642,000.00 of funds he had invested on

behalf of my former clients that had been recovered in personal injury and/or wrongful death

cases.

7.      I appropriately referred these clients to Martin J. Glasser of Charleston and Carl

S. Kravitz of Washington, DC to represent them.  More than 2 million dollars was recovered.

8.      Equitable, however, through its counsel John Slack, then a Jackson Kelly partner,

threatened me on several occasions with being sued as a defendant.  I was not sued, but the

threats continued for years.

9.      Mr. Bailey represented me in frequent discussions with Mr. Slack and

successfully explained to Mr. Slack that I had no knowledge of this fraud and committed no

wrongdoing.  In fact, I presented evidence to the United States Attorney's Office that led to the

guilty plead and conviction of Mr. Marshall for his actions.

10.      The underlying case itself is reported as *Hager v. Marshall*, 202 W.Va. 577, 505

S.E.2d 640 (1998).

11.      That I entered into a joint venture with the law firms of James F. Humphreys

("Humphreys") and the then Ness Motley, now Motley Rice ("MR") located in Charleston,

South Carolina, for the promotion, processing and prosecuting of breast implant cases which was

successfully accomplished.

2

12.     Once those cases were successfully completed, one client made a claim through her attorney James Lees of Charleston, West Virginia alleging legal malpractice against only me for failing to file a medical negligence claim against her physician, a separate claim then allowed by West Virginia law.  That claim was denied at trial by a directed verdict in my favor.  Mr. Bailey was my counsel.

13.     I was the only member of the joint venture sued.  So naturally, the issue of indispensable and/or necessary party joinder of Humphreys and MR arose.  At that time, Mr. Bailey advised against doing so.  In "switching sides" on the issue now, although each case is different, this issue is substantially similar to the instant case.  Here, Bailey Glasser chose to not only be adverse to its former client, but offer advice contrary to its previous advice for the same issue pertaining to Rule 19, albeit the state versus federal rule version.

14.     Even more relevant to this disqualification motion is that in the breast implant case the identical substantially related legal issue of joinder of indispensable or necessary parties in a joint venture arose in the breast implant case, as it does now, and the defendant's counsel has switched sides to favor its new client and argue that such joinder is necessary.

15.     Perhaps more specifically, in its August 30, 2022, letter to Plaintiff's counsel, Bailey Glasser, now on the other side, claims a possible ethical conflict for Plaintiff here in operating a side agreement for the MMS joint venture while practicing at Hendrickson & Long, PLLC, yet in its Motion to Dismiss and supplemental Memorandum, Bailey Glasser claims Hendrickson & Long, PLLC was included in the joint venture.  They did not even meet Defendant Kent until much later.  That term "side agreement" is pejorative and completely untrue and offered to favor its present client and harm its former client.

16.     So, Bailey Glasser not only accused Plaintiff Bucci of an unethical side agreement in the letter, but now claims Hendrickson & Long, PLLC, and to the extent it matters or not, Jesse Forbes were indispensable and necessary members of the joint venture.  None of this is true nor could be true because the joint venture at issue started before either Hendrickson & Long, PLLC or Jesse Forbes even knew Defendant.  No meeting of the minds could have possibly occurred.

17.     In fact, if any of these claims were true, why would those lawyers and Kent need to continue their arrangement for the prosecution of these cases in secret and concealed from Plaintiffs?

18.     That the undersigned was either the partner client working with Mr. Bailey and his firm, or was the client in all three matters, and all of which arose out of underlying law firm relationships or lawyer representation and fee agreements.

19.     Bailey Glasser represented the undersigned in the Hrutkay case, which was well known to Mr. Bailey although other lawyers at Bailey Glasser worked on the cases.  I had many conversations with Mr. Bailey, including concerning the fee, however, because of the complexity and length of the relationship of the then Bucci, Bailey & Javins, LC ("BBJ") and Mr. Hrutkay.

20.     BBJ had long partnered or joint ventured agreement with Mr. Hrutkay.  Then he was caught up in a federal election fraud scheme investigation, and prosecution leading to a guilty plea and a term of imprisonment.  Before that, he failed to perform his part of his agreement leading to the dispute which was settled once Mr. Hrutkay was released from prison.

21.     Finally, as a former client, I object to and take personal and professional offense at the Bailey Glasser characterization of me or my previous law firm in the matters in which I or we were represented by Bailey Glasser.  For example, in his letter of August 30, 2022, Mr.

Snyder makes a charge that is untrue by characterizing me in the worst light possible: "Any side agreement between either or both of your clients (Bucci and Lynch) and another law firm to form any kind of joint venture would be a serious breach of their duties to their employer. It would also likely be unethical."

There is no basis in truth for this attack, no "side agreement", and shows Bailey Glasser is all too willing to attack the integrity and ethics of a former client thereby adding gravity and weight to the attack because it is presumptively based on its professional judgment and experience in representing me in previous matters.

In its letter of November 2, 2022, to Plaintiffs' counsel herein, Mr. Snyder characterized and dismissed the Hrutkay case in terms of a "failed to pay appropriate" attorney fees. That raises two points. First, it is a mischaracterization, adverse and intentionally, of the representation of a former client; and, two, Mr. Snyder does not account for how he gained access to the long-ago closed file. Bailey Glasser should be disqualified.

FURTHER DECLARANT SAYETH NOT:

I swear, under penalty of perjury, that the foregoing it true and correct to the best of my knowledge.

_____
Guy R. Bucci

Date: _May 31, 2023_____