IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

GUY RICHARD BUCCI, et al.,

        Plaintiffs,

v.                          CIVIL ACTION NO. 2:22-cv-00604

BRIAN DOOLEY KENT,

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Brian Dooley Kent's Motion for Attorneys' Fees. [ECF No. 61]. Plaintiffs Guy Richard Bucci and Ashley Nicole Lynch responded in opposition, [ECF No. 64], and Defendant replied, [ECF No. 65]. For the reasons stated herein, Defendant's motion is **GRANTED IN PART and DENIED IN PART**.

I.  Background

On December 30, 2022, Plaintiffs Mr. Bucci and Ms. Lynch filed a Complaint against Defendant Mr. Kent, [ECF No. 1], which was later amended on March 10, 2023, [ECF No. 5]. The parties are attorneys who previously worked together to represent former students harmed at Miracle Meadows School ("MMS") in West Virginia. *Id.* ¶ 3. Specifically, the parties represented clients in 29 cases, which resulted in a successful settlement agreement. *Id.* ¶¶ 25–30.

Plaintiffs alleged that they entered into a Joint Venture Agreement with Defendant related to the MMS litigation but were thereafter "silently terminated and excluded from th[e] Joint Venture, unilaterally and illegally" by Defendant. *Id.* ¶ 57. Specifically, Plaintiffs asserted that Defendant continued to file lawsuits and represent new clients for MMS matters while relying on the work Plaintiffs completed in the first 29 cases, but without Plaintiffs' participation as co-counsel in the cases. *Id.* Plaintiffs claimed that Defendant breached his fiduciary duty by "secretly concealing all additional cases filed after the settlement of the first 29 cases from the Plaintiffs, and denying them all access to the cases, participation in the cases, and recovery of their rightful fee from the Joint Venture's success and expected continued success." *Id.* ¶ 69. Alternatively, Plaintiffs alleged unjust enrichment based on this conduct and requested accounting of all settlements, recoveries, and fees from any civil action for former MMS student clients after January 1, 2021. *Id.* at 34–36. Plaintiffs further sought compensatory and punitive damages, demanding thirty percent of the total fees arising out of the joint venture, including fees for those cases where Plaintiffs were not involved as attorneys. *Id.* ¶ 79. Plaintiffs stated that the settlement value for all of the MMS cases—which includes the original 29 cases as well as the cases Defendant brought later without Plaintiffs—equaled approximately $100,000,000. [ECF No. 64, at 14].

Plaintiffs originally filed this case under seal, prompting Defendant to file a motion to release the documents to the attorneys of record. [ECF No. 18]. After I unsealed the case, *see* [ECF No. 22], Plaintiffs filed two motions to disqualify

Defendant's law firm, Bailey & Glasser ("BG"), from representing Mr. Kent. *See* [ECF Nos. 23, 39]. Plaintiffs filed two other motions to seal, *see* [ECF Nos. 45, 48]. Defendant also filed a motion to dismiss the amended complaint, [ECF No. 26], arguing, *inter alia*, that "Plaintiffs' allegations are so implausible that they simply cannot be credited." [ECF No. 27, at 2]. Before the Court ruled on the pending motions, Plaintiffs voluntarily dismissed all claims against Defendant without prejudice.[1] [ECF No. 59].

Defendant subsequently requested attorneys' fees for expenses incurred in defending this lawsuit pursuant to 28 U.S.C. § 1927, which allows the court to award attorneys' fees, expenses, and costs if an attorney unreasonably and vexatiously multiplies the litigation proceedings. *See* [ECF No. 61]. Defendant argues that "Plaintiffs knew from the inception of this case that their claims were meritless," *id.* at 1, and the voluntary dismissal came after "six months of litigation on meritless claims, two unsupported motions to disqualify Mr. Kent's counsel, three failed attempts to seal in contravention of the local rules, several discovery failures by Plaintiffs, and one deposition where Plaintiff Ashley Lynch conceded that she did not even know the terms of the alleged joint venture that formed the basis of Plaintiffs' claims," [ECF No. 63, at 1]. Defendant further contends that, after the first batch of MMS cases settled, Plaintiffs did not object to being personally "excluded from the fee split and made no efforts to ensure that they received a portion of the fees." [ECF No. 63, at 4 (citing [ECF No. 61-4])]. Defendant

---

[1] The voluntary dismissal came five days after Defendant took the deposition of Plaintiff Ashley Lynch. *See* [ECF No. 49].

3

cites an email communication sent to the parties in November of 2020, which contained a chart of the fee breakdown among firms after the first 29 MMS cases settled. [ECF No. 61-4]. The chart illustrates that no settlement proceeds were distributed to Plaintiffs personally, but instead to the law firm where Plaintiffs were employed at the time.[2] *Id.*

Defendant alleges that, after filing this lawsuit, "Plaintiffs spent more time attacking Mr. Kent and his counsel than litigating their case," as evidenced by their failure to serve a single set of discovery requests, take or notice a single deposition, or subpoena any third parties. [ECF No. 63, at 4–5]. During discovery, Defendant contends that Plaintiffs "fielded baseless objections, withheld documents, and failed to conduct meaningful searches" and "[s]everal of the withheld documents were not produced until less than twenty-four hours before the deposition of [Plaintiff] Ashley Lynch." *Id.* at 5–6. As both Plaintiffs are attorneys, Defendant believes Plaintiffs impermissibly hid behind the veil of attorney-client privilege to justify refusing to produce discoverable data or respond to questions asked in the deposition. *Id.* at 7. Defendant highlights how "Ms. Lynch could not testify when her attorney-client relationship with co-plaintiff began, the terms of that representation, the scope of that relationship, or any writing evidencing that

---

2 The fees paid to Plaintiffs' firm, Hendrickson & Long ("H&L") did not amount to 30% of the total fee award either. Plaintiffs were, however, paid a bonus from the law firm for their work on the MMS cases, as admitted by Plaintiff Lynch in her deposition. *See* [ECF No. 61-3, at 54–57]. Ms. Lynch further admitted that she knew "[t]he fees would be going to Hendrickson & Long," and she expected that H&L would then compensate her for the work completed. *Id.* at 16. Plaintiffs, in their response in opposition to the motion for attorneys' fees, state that their former law firm, H&L, was never part of the joint venture but rather the joint venture was between Plaintiffs and Defendant personally. [ECF No. 64, at 9].

4

relationship." *Id.* at 7 (citing [ECF No. 61-3]).[3]

Much of the evidence Defendant offers in support of his motion for attorneys' fees comes from this deposition, which Defendant contends confirms that Plaintiffs knew their claims were baseless. *Id.* at 8–9. In all, Defendant argues that Plaintiffs "never had a claim" because "*no one*—including Plaintiffs—contemplated that the alleged joint venture existed" prior to the filing of this lawsuit. *Id.* at 11 (emphasis in original). Instead, the alleged joint venture, according to Defendant, is "an after-the-fact fiction to recover fees for cases on which Plaintiffs performed no work." *Id.* As such, Defendant requests attorneys' fees in this case because "Plaintiffs unreasonably and vexatiously brought and sustained this lawsuit, engaged in studied disregard for the orderly process of justice, and caused Mr. Kent to incur substantial legal fees on frivolous, bullying litigation." *Id.* at 12.

In opposition, Plaintiffs respond that "not a single docket entry in any pleading, motion, discovery, motion to compel or any other entry" was vexatious or done in bad faith. [ECF No. 64, at 2]. Explaining how they voluntarily dismissed the case without prejudice, Plaintiffs also highlight the court's dismissal order, which provided that each party bear its own costs and expenses. *Id.* at 4. Plaintiffs argue that the lawsuit was not meritless because joint ventures can be expressed or implied and for a single purpose. *Id.* at 8. While Plaintiffs admit that Plaintiff Lynch had limited knowledge of the joint venture because she was not part of the alleged financial discussions between the parties, they assert that Plaintiff Bucci

---

[3] The deposition transcript shows that Ms. Lynch repeatedly answered that she did not recall the terms of the attorney-client relationship with Mr. Bucci despite the fact that each represented the other. [ECF No. 61-3, at 3–7].

5

had a "broad and detailed knowledge of the same." *Id.* at 16. They state that attorneys' fees should not be awarded because the court never "adversely adjudicat[ed] against Plaintiffs,"[4] and there was "not a single motion to compel, motion for sanctions, or other basis to question the bona fides of the claim or the conduct of Plaintiffs individually or counsel." *Id.* at 13.

## II. Legal Standard

An attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 18 U.S.C. § 1927. Inherent in Section 1927 is an element of bad faith. *Harvey v. Cable News Network*, 48 F.4th 257, 276 (4th Cir. 2022) (finding that the circumstances did not "demonstrate a level of egregiousness, a pattern of misconduct, or result in protracted litigation to the extent that this Court and others have found bad faith that warranted sanctions"). To justify sanctions under § 1927, there must be "bad-faith conduct that wrongfully multiplies proceedings." *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 520 (4th Cir. 2018) (finding attorneys acted in bad faith "by hiding a relevant and potentially dispositive document from the Court"). An award under this statute is compensatory—rather than punitive—in nature. *Id.* The court must find "a causal link between wrongful conduct and an unreasonable and vexatious multiplication of proceedings, then [] connect the costs wrongfully incurred as a result of the sanctioned attorney's conduct to the amount awarded to

---

[4] Plaintiffs do admit that the court did issue "corrective procedure Orders." [ECF No. 64, at 13]. This is in reference to two of Plaintiffs' motions to file under seal, which I denied. *See* [ECF Nos. 3, 22, 45, 47].

6

the moving party." *Id.* (citing *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017) ("[S]uch an order is limited to the fees the innocent party incurred solely *because of* the misconduct.") (emphasis added)).

This statute "does not distinguish between winners and losers, or between plaintiffs and defendants," and is instead "concerned only with limiting the abuse of court processes." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 762 (1980).[5] In other words, 28 U.S.C. § 1927 "focuses on the conduct of the litigation and not its merits." *Salvin v. Am. Nat'l Ins. Co.*, 281 F. App'x 222, 226 (4th Cir. 2008) (unpublished) (quoting *DeBauche v. Trani*, 191 F.3d, 499, 511 (4th Cir. 1999)) (finding an attorney multiplied the proceedings unreasonably and vexatiously by refusing to voluntarily dismiss a case "once its lack of merit became evident"). For example, "an attorney who files a meritless claim may not be sanctioned under § 1927 if he does not engage in" an unreasonable and vexatious multiplying of the proceedings. *DeBauche*, 191 F.3d at 511. And "the filing of a single complaint cannot be held to have multiplied the proceedings unreasonably and vexatiously." *Id.* at 511–12.

"[A]ttorneys can only be assessed fees to the extent that those fees were caused by their conduct." *NEXUS Srvs., Inc. v. Moran*, No. 5:16-CV-00035, 2018 WL 1461750, at *10 (W.D. Va. Mar. 23, 2018) (citing *Fox v. Vice*, 563 U.S. 826, 836 (2011)) (finding that counsel's conduct throughout the litigation demonstrated bad faith), *aff'd*, 750 F. App'x 241 (4th Cir. 2019). Conduct that supports an award under

---

[5] This is of particular importance here because Plaintiffs spend considerable time in their brief arguing that there is no prevailing party as they voluntarily dismissed the case. *See generally* [ECF No. 64]. However, 28 U.S.C. § 1927 does not require there to be any "winners and losers" but instead allows attorneys' fees to be levied against any party who unreasonably and vexatiously multiplies the proceedings.

7

28 U.S.C. § 1927 can include "misrepresentations of evidence causing unnecessary litigation and the filing of unsupported motions." *Akira Techs. Inc. v. Conceptant, Inc.*, 773 F. App'x 122, 125 (4th Cir. 2019) (finding activity to be neither unreasonable nor vexatious when a party "filed only one amended complaint, completed discovery within the discovery period, and promptly filed a motion to amend to dismiss claims after discovery ended"). Many such cases of sanctionable conduct "involve fraud, deceit, misrepresentation, harassment, and unethical conduct." *Harvey*, 48 F.4th at 281. For example, in *Sweetland v. Bank of Am. Corp.*, 241 F. App'x 92, 97 (4th Cir. 2007), the Fourth Circuit affirmed a district court's sanctions order because the party continued to pursue claims despite knowing "that evidentiary support for the allegations would not be forthcoming." The attorney in *Sweetland* also "took affirmative steps to stall the discovery process through evasive and nonresponsive answers" and made "intentional misrepresentations for the purpose of obtaining a settlement from the defendants." *Id.*

## III. Discussion

Defendant has presented some troublesome facts to the court, relying heavily on the deposition of Plaintiff Lynch to prove that Plaintiffs acted vexatiously and unreasonably by bringing this litigation. However, I must determine what, if any, "bad-faith conduct [] wrongfully multiplie[d] proceedings." *See Six*, 891 F.3d at 520. As such, I will consider the existence of bad faith conduct on an individual filing basis. *See Akira Techs. Inc.*, 773 F. App'x at 125 (vexatious and unreasonable multiplication of proceedings includes "the filing of unsupported motions").

8

### A. Bringing and Sustaining the Litigation

Defendant argues that Plaintiffs never had a claim, and as such, bringing and sustaining this "meritless" lawsuit is sanctionable under § 1927. [ECF No. 63, at 2]. *See Jolly Group Ltd. V. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) ("[A] court has discretion to impose § 1927 sanctions when an attorney has . . . *pursued* a claim that is without a plausible legal or factual basis and lacking in justification.") (emphasis added) (internal quotations omitted). Defendant argues that the alleged bad faith conduct—pursuing this case—caused an unreasonable and vexatious multiplication of proceedings because it required "performing initial work on the case (such as formulating overall strategy and preparing for discovery), writing and fully briefing a motion to dismiss," and defending against other motions.[6] [ECF No. 63, at 10].

An attorney who files a meritless claim may not be sanctioned under 28 U.S.C. § 1927 unless he acts unreasonably and vexatiously in multiplying the litigation proceedings, *DeBauche*, 191 F.3d at 511. As the concern is with the *conduct* of the litigation and not on its merits, the filing of a complaint alone is not enough to impose sanctions under 28 U.S.C. § 1927. *Id.* at 511–12 (concluding "as a matter of law that the filing of a single complaint cannot be held to have multiplied the proceedings unreasonably and vexatiously"). Instead, the appropriate authority for sanctions for the filing of a frivolous complaint comes from Rule 11 of the Federal Rules of Civil Procedure. *See id.* at 512. Rule 11 and 28 U.S.C. § 1927 serve different purposes. Unlike § 1927—which is not punitive and instead ensures the

---

[6] These other motions will be discussed more fully below. *See infra* III.B, III.C.

parties act reasonably to advance the litigation forward on its merits—Rule 11 allows the court to impose sanctions when pleadings contain allegations that are not warranted by existing law or include factual allegations that have neither evidentiary support nor the likelihood of forthcoming evidentiary support. *Id. See also* Fed. R. Civ. P. 11(b).

Here, the facts contained in the Amended Complaint lack evidentiary support, and Plaintiffs did not at any point attempt to uncover such evidence throughout discovery. This is revealed by the record, which shows that Plaintiffs neither filed any discovery requests nor attempted to take a single deposition during the pendency of this action. And the claims in the lawsuit—a breach of fiduciary duty in connection with a joint venture as well as unjust enrichment—are inconsistent with the record as established in this case. For example, Defendant produced documents showing the fees awarded in in connection with the settlement of the first 29 MMS cases were distributed to Plaintiff's law firm, Hendrickson & Long ("H&L") without objection from Plaintiffs. *See* [ECF No. 61-4]. Plaintiff Lynch stated that she received a $50,000 bonus from H&L for her work on the MMS cases, and Plaintiff Bucci received a $500,000 bonus. [ECF No. 61-3 at 54–57].[7] Plaintiff Lynch admitted that there is no physical writing containing the terms of the alleged joint venture. *Id.* at 51. She further stated that she never told anyone that she and Mr. Bucci were entitled to 30% of the fees pursuant to the alleged joint venture. *See id.* at 47–48. Last, she indicated that she had planned on getting paid by her

---

[7] Citations herein to deposition testimony refer to the CM/ECF page numbers.

current law firm and not from Defendant for her work in these cases. *Id.* at 16 (stating that "the fees would be going to [H&L]").

These facts suggest that at the very least, Plaintiff Lynch knew or should have known that there was no joint venture between the parties, and the claim would be unsuccessful. However, the conduct of filing a single complaint, even if such claim is meritless, cannot "have multiplied the proceedings unreasonably and vexatiously." *DeBauche*, 191 F.3d at 511–12. Defendant likewise did not file any motion for sanctions under Rule 11[8] and did not assert that the claim was meritless or sanctionable until after the conclusion of this case. *Compare* [ECF Nos. 26, 27 (Defendant's Motion to Dismiss)] *with* [ECF Nos. 61, 63 (Defendant's Motion for Sanctions)]. Had Defendant believed Plaintiffs knew at the outset that their case was completely meritless and filed for an improper purpose, Defendant could have sought the appropriate remedy under Rule 11 during the proceedings. And after the deposition—which made clear the allegations were without a proper basis—Plaintiffs voluntarily dismissed this case. [ECF No. 59]. I am hesitant to sanction attorneys who promptly dismiss a case after realizing the claim is meritless. I say this somewhat reluctantly as Plaintiffs are both attorneys who should be well aware of Rule 11 and sanctions concerning meritless litigation.

Although the filing of a meritless complaint is insufficient to warrant sanctions under 28 U.S.C. § 1927, I will also consider the course of proceedings following the filing of the Complaint. *See Salvin*, 281 F. App'x at 226. Plaintiffs did

---

[8] Defendant later explained in response to a motion to disqualify that the motion was "so meritless that it hardly warrants a response" except "perhaps, from one under Federal Rule of Civil Procedure 11(b)." [ECF No. 41 at 1].

11

nothing to help realize their claims as the record shows that Plaintiffs did not file any discovery requests or attempt to take a single deposition. Instead, Plaintiffs filed two motions to disqualify BG and other motions to file documents under seal. Additionally, Defendant argues that there were "numerous discovery failures by Plaintiffs." [ECF No. 63, at 9]. I now turn to whether this conduct was done in bad faith and whether it unreasonably and vexatiously multiplied the proceedings.

### B. Motions to Disqualify Counsel

I will consider whether Plaintiff's motions to disqualify counsel amounted to wrongful, bad faith conduct that unreasonably multiplied the proceedings. Plaintiff's first motion to disqualify counsel was based on the allegations that BG's "representation of Bucci as a client spanned 18 years . . . [and] involv[ed] three separate representations, countless discussions, correspondence and consultations implicating attorney-client privilege." [ECF No. 24, at 2]. Plaintiffs alleged that those matters were "substantially similar" to this case and concerned "attorney representation, with attorney fee agreements, joint venture, and co-counsel agreements." *Id.*

Prior to filing this lawsuit, Plaintiffs made BG aware of their concerns regarding its representation of Mr. Bucci. *See* [ECF No. 23-1, at 3]. At that point, in November of 2022—before this lawsuit was filed—BG replied and explained that it had completed a conflict check and that the two previous matters did not present a conflict. *Id.* at 35. Plaintiffs later filed their first motion to disqualify BG based on West Virginia Rule of Professional Conduct 1.9(a), which states that attorneys who

12

have previously represented a client cannot represent another individual in a "substantially related matter" against the former client. [ECF No. 23]. In response, Defendant explained that the previous representations included (1) "one of BG's founding partners, Ben Bailey, provid[ing] Mr. Bucci with advice from 1995-1998" regarding a dispute that arose before BG was formed; (2) "a legal malpractice case [against Mr. Bucci] related to breast implant litigation two decades ago;" and (3) "a referral fee dispute one decade ago" against Bucci, Bailey, & Javins, Mr. Bucci's former law firm. [ECF No. 31, at 1–2].

Plaintiffs also filed a second disqualification motion, arguing that personal identifiable information had been inadvertently released to BG via a third-party subpoena, and BG must be disqualified to maintain the integrity of the judicial process. [ECF No. 39]. This confidential personal identifiable information included social security numbers of Plaintiffs and some family members.[9] *Id.* ¶ 3. In their motion, Plaintiffs relied on several cases addressing privileged information, but they failed to cite any authority establishing that counsel must be disqualified where, as here, a third-party responds to a subpoena with *confidential*—not privileged—information.

Although the Court did not rule on the motions before the case was dismissed, an adverse ruling against a party is not required for an award under 28 U.S.C. § 1927. If Plaintiffs had only filed their first motion to disqualify, I would not

---

[9] In the subpoena, Defendant requested "[a]ll employment and severance documents in [H&L's] possession relating to Guy Richard Bucci and Ashley Nicole Lynch, as well as any contracts between the parties relating to the disposition of the cases involving the Miracle Meadows School, Seventh Day Adventists Church and Mountain View Conference." [ECF No. 21-1]. Defendant did not specifically request the disclosure of any social security information.

13

be concerned about their conduct in this case because the evidence shows that Plaintiffs were concerned with BG's representation of Mr. Kent before the lawsuit was filed. *See* [ECF No. 23-1, at 3]. And although this first motion would have been denied as the matters were not substantially related, the parties do not dispute that BG did previously represent Mr. Bucci, which evidences that his concerns about conflicts of interest may not have been wholly unfounded. The first motion to disqualify BG did not contain any misrepresentations of those previous matters or hide the scope of those matters from the Court, as evidenced by Plaintiffs' attached email exhibit containing BG's explanations of the previous representations. *See* [ECF No. 23-1, at 35–36].

However, Plaintiffs' filing of a second motion to disqualify BG amounts to bad faith conduct that unreasonably multiplied the proceedings in this case, and Defendant Kent wrongfully incurred costs in defending the motion. In point of fact, the Plaintiffs had notice of the third-party subpoena and an opportunity to object well before the confidential information was released. *See* [ECF No. 41, at 2 (stating that BG served the subpoena on Plaintiffs on May 4, 2023, and "Plaintiffs were served the notice of the subpoena . . . again through CM/ECF" on May 10, 2023)]. Plaintiffs did not object in the one month between the subpoena request and the production of documents, and Plaintiffs also knew that BG took steps to prevent the disclosure of any confidential information that was released in response to the subpoena. *See* [ECF No. 40 (stating that the response to the subpoena included a non-disclosure agreement)]. And Plaintiffs in their motion notably failed to explain

14

how their own personal identifiable information may be used to prejudice them in this litigation. Instead, Plaintiffs indicated that Defendant or his counsel could potentially release the information to the public, causing Plaintiffs to become the victims of identity theft. *Id.* at 5. Plaintiffs also accused H&L, their old firm, of committing a tort based on its response to the subpoena, *id.* at 6, and in an email prior to the filing of this motion, Plaintiffs threaten further legal action against BG, Defendant, and H&L. *See* [ECF No. 41-1, at 2 ("We intend to fully pursue all remedies against [stated individuals] . . . . Therefore, you should promptly provide notice to your insurance carrier.")].

In light of this evidence, I find that this second motion to disqualify is an abuse of the court process and a tactic to harass Defendant and his counsel. The third-party responded to a valid subpoena, in compliance with the Federal Rules of Civil Procedure, without any objection from Plaintiffs until two weeks after the information was produced. Moreover, this motion is wholly unsupported by law, and Plaintiffs failed to cite any authority establishing that counsel must be disqualified where a third-party responds to a subpoena with confidential, and not privileged, information. *See generally* [ECF Nos. 39, 40]. The Fourth Circuit has stated that it "can envision situations in which motions are filed which are so baseless in fact and law as to be sanctionable under § 1927 as having been filed in bad faith, even though they are purportedly grounded in novel theories of law." *Sweetland*, 241 F. App'x at 98–99. And even if this motion to disqualify were "grounded in [a] novel theor[y] of law" that would require disqualification of attorneys in light of the

15

production of confidential—and not privileged—information, the motion is so baseless in fact as to amount to bad faith.

This bad faith conduct caused an unreasonable multiplication of the proceedings. Particularly, it required Defendant and counsel to litigate against a frivolous motion requesting that BG be disqualified based on confidential information unrelated to the merits of this case. Courts disfavor motions to disqualify as opposing parties may "misuse . . . disqualification motions for strategic reasons." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992). As such, Defendant incurred unnecessary costs in having to respond to and defend against the Second Motion to Disqualify BG. [ECF No. 39]. Because I find a causal connection between Plaintiffs' conduct and the unreasonable and vexatious multiplication of proceedings, which can be connected to costs wrongfully incurred by the Defendant, *see Six*, 891 F.3d at 520, Defendant's motion for attorneys' fees is **GRANTED** insofar the attorneys' fees were incurred as a result of defending the second motion to disqualify BG.

### C. Motions to File Under Seal

Next, Plaintiff twice attempted to seal the record in whole or in part. At the onset of this case, Plaintiffs filed a motion to file the case under seal. *See* [ECF No. 3]. The Clerk's Office opened the case under seal, which means that any documents filed in this case were not available electronically to the attorneys of record, the parties, or the public. Thus, neither Defendant nor his counsel could access the record in this case, and Defendant had to file a motion to release the documents.

16

See [ECF No. 18]. I found that Plaintiffs failed to allege a compelling reason to seal the record or demonstrate that their request to seal is narrowly tailored to their stated interest. [ECF No. 22, at 8].

Plaintiffs then filed another motion to file documents under seal related to the Second Motion to Disqualify BG as counsel. [ECF No. 45]. However, Plaintiffs' motion failed to comply with the requirements for filing a motion to seal, which I reiterated in the first Memorandum Opinion and Order. *See* [ECF No. 47 (citing [ECF No. 22])]. I denied this motion. *Id.*

Next, Plaintiffs filed an Omnibus Renewed Motion to file documents under seal relating to the Second Motion to Disqualify BG. [ECF No. 48]. In it, Plaintiffs additionally requested the "Court's determination of [both] privilege and confidentiality" in relation to these documents. *Id.* Again, Plaintiff did not attempt to explain why the personal identifiable information or the documents produced via subpoena were privileged. Instead, Plaintiffs stated that their counsel "contacted opposing counsel regarding Plaintiffs' claim of privilege and confidential information . . . and were unsuccessful in their effort to meet and confer." [ECF No. 48, at 2].

Defendant responded in opposition to this motion because "the Motion [was] not what it purport[ed] to be" as it went well beyond sealing and instead asked for a determination of privilege under Federal Rule of Civil Procedure 45(e)(2)(b). [ECF No. 51, at 2]. Defendant also claimed that Plaintiffs' motion "does not reflect what happened in this case." *Id.* at 3. Defendant stated that in the purported "meet and

17

confer on this matter," Plaintiffs failed to propose redactions, did not identify specific documents to return, and never proposed a protective order. *Id.* Defendant stated that he "would not object to the entry of a protective order or the marking of certain subpoenaed documents as confidential," but Plaintiffs never suggested this course of action and instead "resorted to time-wasting, unnecessary motions practice" before the Court. *Id.* As such, Defendant stated that the Court would "waste resources conducting a confidentiality review when Plaintiffs have not meaningfully attempted to resolve that issue with Defendant." *Id.*

First, Plaintiffs' motion was filed in contradiction to Local Rule of Civil Procedure 5.2.1, which provides that redaction would be the appropriate remedy in filing confidential information such as social security numbers. Moreover, Plaintiffs' misrepresentation of the meet and confer is concerning to the Court.[10] Plaintiffs alleged that "the attempt to meet and confer on this matter was unsuccessful," [ECF NO. 48-1, at 9], but Plaintiffs' letter failed to propose any protective measures and instead demanded that Defendants "immediately cease and desist from any further use of and/or publication of any of this information until fully addressed by Judge Goodwin and any other court in our soon to be filed motions we believe may have jurisdiction to address these issues." [ECF No. 41-1, at 2]. Plaintiffs also stated that they "intend to fully pursue all remedies against" the parties involved and that

---

[10] It should be noted that Defendant—and not Plaintiffs—attached the email exhibits to the court regarding the disclosures made in response to the subpoena. *See* [ECF No. 41 ("Response by Brian Dooley Kent in opposition to . . . SECOND MOTION . . . for an Order Disqualifying Bailey & Glasser, LLP")].

Defendant and BG "should promptly provide notice to [their] insurance carrier." *Id.* at 3.

In short, Plaintiffs requested a determination of privilege in the Omnibus Renewed Motion to Seal without providing any evidence or caselaw to suggest that such information disclosed via subpoena was, in fact, privileged. Further, Plaintiffs apparently mischaracterized their discussions with BG in its motion by stating that the attempt to meet and confer was "unsuccessful." [ECF No. 48, at 2]. This required Defendant to file a response correcting the record, wherein he explained that Plaintiffs only threatened further litigation but failed to propose redactions, failed to suggest a protective order, and failed to identify what specific documents should be returned. As such, I find that this Omnibus Renewed Motion to Seal— which requested the Court's determination of privilege without any basis in law or fact for why the documents were privileged—was brought in bad faith, and it multiplied the proceedings because it caused unnecessary litigation before the court that could have been avoided. This motion required Defendant to respond and correct the record, which caused Defendant to wrongfully incur attorneys' fees. Therefore, Defendant's motion is **GRANTED** insofar as it relates to fees incurred in responding to this motion.

### D. Alleged Discovery Failures

Finally, Defendant alleges that there were numerous discovery failures throughout the litigation. In addition to Plaintiffs' failure to serve a single discovery request, Defendant also argues that Plaintiffs "fielded baseless objections, withheld

19

documents, and failed to conduct meaningful searches of their own data" in responding to Defendant's discovery requests. [ECF No. 63, at 5]. However, I need not determine whether this conduct was done in bad faith because I do not find that these discovery failures unreasonably and vexatiously multiplied the proceedings. Even if Plaintiffs attempted "to stall the discovery process," *see Sweetland*, 241 F. App'x at 97, Defendant did not file any motions to compel documents and, therefore, did not engage in litigation before the Court based on the discovery disputes. As such, there was no unreasonable and vexatious multiplication of proceedings nor costs wrongfully incurred due to Plaintiffs' alleged discovery misconduct. *See Six*, 891 F.3d at 520.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Attorneys' Fees under 28 U.S.C. § 1927 is **DENIED with the exception of an award of attorneys' fees caused by responding to Plaintiffs' Second Motion to Disqualify Bailey & Glasser, [ECF No. 39], and the Omnibus Renewed Motion to File Documents Under Seal, [ECF No. 48].** As to those two matters, the motion is **GRANTED**. The reasonable amount to be awarded to Defendant is **HELD IN ABEYANCE** until the Court can review the detailed breakdown of the attorneys' bills. I **ORDER** Defendant to provide copies of the attorneys' bills for the Court's review within ten days from the date of this Order. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: February 5, 2024

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE